**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CHAD AMERINE, an individual,

Plaintiff,

v.

DSW, INC.; DSW, INC. BENEFIT PLAN; and DOES 1-10, inclusive;

Defendant.

Case No. 2:16-CV-05792-ODW (PJWx)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW [30]**

## I. INTRODUCTION

Plaintiff Chad Amerine brought this action against DSW, Inc., and DSW, Inc. Benefit Plan (collectively "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover damages for the denial of health insurance benefits under a group health insurance plan (the "Plan") established and funded by Defendants, of which Amerine is a plan participant. He seeks reimbursement for the costs associated with a cochlear implant, which Defendants claim was not medically necessary, under the terms of the Plan.

On July 10, 2017, after briefing by the parties, the Court ordered that this case would be governed by the abuse of discretion standard of review. (Order, ECF No. 29.)

On February 5, 2018, the parties simultaneously moved for judgment in

advance of the bench trial scheduled for March 13, 2018. (Mot. for Judgment, ECF No. 30; Pl.'s Tr. Brief, ECF No. 31.) After each party filed a responsive brief, and the parties stipulated to the documents comprising the administrative record, the Court issued a Minute Order requesting the parties to respond if they thought oral argument would be productive. (Min. Order, ECF No. 35.) Having heard no response, the Court took the matter under submission on March 8, 2018, and determined the matter suitable for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. For the reasons discussed below, the Court concludes Defendants did not abuse their discretion in denying Amerine the benefits he sought, and **GRANTS** Defendants' Motion. (ECF No. 30.)

## II. FINDINGS OF FACT[1]

1. Amerine, a California resident, was an employee of DSW, Inc.

2. The DSW, Inc. Plan is an ERISA employee welfare benefit plan that provides health insurance benefits to DSW's employees. Amerine was covered by the Plan.

### A. The Plan

3. The Plan is self-funded.

4. Defendants designated UMR, Inc. ("UMR"), a division of UnitedHealthcare, to provide administrative services, such as processing and adjudicating claims according to the terms of the Plan. (Administrative Record ("AR") 214; 218–19, ECF No. 32.)

5. Under the Plan, UMR is named as Third Party Administrator for medical claims.

6. The Plan reserves "full and discretionary authority" for the Plan Administrator and Third Party Administrator to interpret the plan documents and make benefit determinations. (AR 219.)

---

[1] To the extent any finding of fact could be construed as a conclusion of law, or vice versa, they are adopted as such.

7. The Plan requires that covered services must be "medically necessary." The Plan defines "medically necessary" as:

> health care services provided for the purpose of preventing, evaluating, diagnosing or treating an Illness, Injury, mental illness, substance use disorder, condition, disease or its symptoms, that are *all of the following as determined by us or our designee, within our sole discretion*:
>
> - In accordance with Generally Accepted Standards of Medical Practice; and
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for Your Illness, Injury, mental illness, substance use disorder, disease or its symptoms; and
> - Not mainly for Your convenience or that of Your doctor or other health care provider; and
> - Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of Your Illness, Injury, disease or symptoms.
>
> *The fact that a Physician has performed, prescribed, recommended, ordered, or approved a service, treatment plan, supply, medicine, equipment or facility, or that it is the only available procedure or treatment for a condition, does not, in itself, make the utilization of the service, treatment plan, supply, medicine, equipment or facility Medically Necessary.*
>
> (*Id.* at 310 (emphasis added).)

8. The Plan also excludes services that "the Plan determines are not Medically Necessary...." (*Id.* at 283.)

9. The Plan explains that "UnitedHealthcare Clinical Services develops and maintains clinical policies that describe the Generally Accepted Standards of Medical Practice, scientific evidence, prevailing standards and clinical guidelines supporting our determinations regarding specific services." (*Id.* at 310.) These polices were

available to covered members, such as Amerine, upon request. (*Id.*) There was a specific policy that addressed the need for cochlear implants (the "Policy").

**B. Amerine's Course of Treatment & UMR's Denial under the Plan & Policy**

10. Amerine consulted with doctors at UCLA in October 2015, regarding hearing loss in his left ear. (*Id.* at 72.) He previously underwent a total footplate stapedectomy in the left ear on August 12, 2015. (*Id.*) He had a hearing test prior to the stapedectomy that revealed "significant mixed hearing loss in the left ear with incomplete partition type II and normal hearing sensitivity in the right ear…." (*Id.*)

11. On October 23, 2015, Dr. Akira Ishiyama evaluated Amerine, and noted that the stapedectomy was not successful, and "unilateral cochlear implantation should be considered." (*Id.* at 74–76.) Dr. Ishiyama referred Amerine for a consultation with an audiologist, Denise Nicholson.

12. Dr. Nicholson advised Amerine that, after a unilateral cochlear implant, "he can expect to hear better but not perfectly…[because] a coch [sic] ear implant does not restore normal hearing nor does it block out background noise." (*Id.* at 77.) Amerine was interested "in restoring hearing to the left ear as his goal [was] to join the Police Force." (*Id.*) After discussing the procedure, Amerine told Dr. Nicholson to request authorization for the implant, but she told him "that because unilateral cochlear implantation for unilateral hearing loss is considered 'off-label,' *his insurance provider may not cover the cost of the device and or surgery. At that point, he would be financially responsible. Patient understood this and agreed to move forward*." (*Id.* (emphasis added).)

13. On January 11, 2016, UMR sent Amerine a letter informing him that "[t]he request for a unilateral cochlear implant with prosthetic implant [was] denied as not being medically necessary. Criteria require[d] bilateral sensorineural hearing loss to qualify a cochlear implant as medically necessary and clinical documentation did not support that criteria." (*Id.* at 1, 79–81.) Leading up to the denial, a physician

consulted and applied the Policy based on academic studies and Food and Drug Administration ("FDA") indications for cochlear devices, as provided for, and developed by UnitedHealthcare. (*Id.* at 79–81, 316–39.) The Policy required a diagnosis of bilateral hearing impairment before finding a cochlear implant medically necessary. (*Id.* at 317.)

14. On January 13, 2016, Amerine underwent surgery to implant the unilateral cochlear device, despite being told he would be personally responsible to pay for the procedure if his insurance denied it, which it had. (*Id.* at 1, 77, 101–03.) The surgery, inclusive of all costs, totaled $100,139.15. (*Id.* at 97.)

15. On January 19, 2016, after the surgery, Dr. Ishiyama wrote to UMR on Amerine's behalf, again explaining why Dr. Ishiyama thought the unilateral cochlear implant would be beneficial, and requesting a reconsideration of UMR's original denial. (*Id.* at 173–74.) UMR's physician again reviewed the case, and found that because FDA indications require bilateral hearing loss, and "no documentation [was submitted by Amerine] supporting this, [the] coverage determination [was] unchanged." (*Id.* at 82.)

16. On January 22, 2016, UMR issued a second letter upholding its pre-surgery decision to deny coverage because the implant was not "medically necessary" as defined in the Plan and Policy. (*Id.* at 213.)

17. On January 29, 2016, Defendants paid UCLA the negotiated rate for the cost of the cochlear implant surgery, and the negotiated rate for the anesthesia used during the surgery. (*Id.* at 177, 179.) However, Defendants refused to pay the negotiated cost of the implant itself. (*Id.* at 13–15.)

18. On February 22, 2016, Dr. Nicholson wrote UMR to support Amerine's appeal regarding UMR's decision to deny coverage of the cochlear implant, and claimed that the implant was medically necessary.

19. On March 17, 2016, Amerine formally appealed the denial. (*Id.* at 92–94.) UMR retained an independent physician who was board certified in Otolaryngology Head and Neck Surgery to review the claim. (*Id.* at 86–91.)

20. On May 20, 2016, the physician concluded that a cochlear implant is medically necessary where there is bilateral hearing loss, of which there was none, and that "[t]here was an alternative treatment for the patient's hearing loss, a bone anchored hearing aid (BAHA) placement." (*Id.*)

21. On May 23, 2016, based on the physician's independent review and conclusions, for a third time, UMR formally denied Amerine's claim. (*Id.* at 2–6.)

22. UMR erroneously paid for the costs associated with the anesthesia and surgery to implant the cochlear device. (Jessica Ward Decl. ("Ward Decl.") ¶ 5, ECF No. 34-1.) In December 2016, and March 2017, UMR recovered the costs associated with these items when it realized it erroneously accepted those claims, after the surgery was already completed, and after it had already denied the claim. (*Id.*; *see also* AR 11–12, 97, 340–41.)

## III. STANDARD OF REVIEW

23. Because the Plan is self-funded and the Plan reserves all discretion to Defendants and UMR, this case is governed by the abuse of discretion standard of review. *Williby v. Aetna Life Ins. Co.*, 867 F.3d 1129, 1136 (9th Cir. 2017) ("Thus, for a self-funded disability plan like Boeing's, the saving clause does not apply, and state insurance regulations operating on such a self-funded plan are preempted.").

24. "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Rabkin v. Oregon Health Sci. Univ.*, 350 F.3d 967, 977 (9th Cir. 2003) (citation omitted). Under the abuse of discretion standard, a reviewing court should "reverse only if [it is] 'convinced firmly that the reviewed decision lies beyond the pale of reasonable justification under the circumstances.'" *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (citation

omitted). In fact, "[t]he abuse of discretion standard requires [the reviewing] court to uphold [a prior] determination that falls within a broad range of permissible conclusions." *Kode v. Carlson*, 596 F.3d 608, 612–13 (9th Cir. 2010) (per curiam). "An ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (citing cases).

## IV. CONCLUSIONS OF LAW

25. The Plan reserves all discretion to Defendants and/or their administrator, UMR. Defendants determined that Amerine's cochlear implant was not "medically necessary" under the Plan, and that determination is entitled to deference. *Estate of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 405 (9th Cir. 1997) (noting that courts will uphold decisions of an ERISA administrator "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith."). The Plan defines health care as "medically necessary," if, among other things, it is a Generally Accepted Standard of Medical Practice. The Plan references the Policy, which provides FDA guidance on whether a procedure is "medically necessary." The Policy, as interpreted by UMR, and an outside physician, provides that cochlear implants are only indicated where the patient suffers from bilateral hearing loss. Amerine did not suffer from bilateral hearing loss. Defendants' denial is also supported by the fact that the independent physician reviewer concluded that there were alternative, less expensive, avenues for Amerine to consider. Under the Plan, a procedure is not "medically necessary" if it is more costly than other avenues likely to produce similar results. (*See* AR 310.) Accordingly, Defendants did not abuse their discretion in finding, after several levels of review, that the surgery was not "medically necessary" under the Plan.

26. That Amerine's physicians determined that the surgery would assist him, or better his quality of life is not determinative under the terms of the Plan. The Plan specifically provides: "The fact that a Physician has [recommended] a [procedure], or that it is the only available procedure or treatment for a condition, does not, in itself, make the utilization of the service, treatment plan, supply, medicine, equipment or facility Medically Necessary." (*Id.*) This clause is not at odds with other language in the Plan, and is enforceable. *See Boyd*, 410 F.3d at 1178.

27. Defendants and UMR may rely on the Policy in evaluating whether a procedure is "medically necessary," under the terms of the Plan. *Cohorst v. Anthem Health Plans of Kentucky, Inc.*, CV 16–7925–JFW (SKx), 2017 WL 6343592, at * 8, (C.D. Cal. Dec. 12, 2017) ("Accordingly, the Court concludes that the Medical Policy is part of the Plan."); *see also Horn v. Berdon, Inc. Defined benefit Pension Plan*, 938 F.2d 125, 127 (9th Cir. 1991) ("[T]here is no requirement that documents claimed to collectively form the employee benefit plan be formally labelled as such."); *Gonzales v. Unum Life Ins. Co. of Am.*, 861 F. Supp. 2d 1099, 1107 (S.D. Cal. 2012) (finding that a Plan document may incorporate other formal or informal documents).

28. Defendants have not waived their ability to claim the procedure was not "medically necessary" by initially paying for the cost of the surgery and anesthesia, but not the implant. "A waiver occurs when 'a party intentionally relinquishes a right' or 'when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017) (quoting *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991)). The doctrine of waiver "looks to the act, or the consequences of the act, of one side only." *Intel Corp.*, 952 F.2d at 1559 (internal citations and question marks omitted). Defendants denied Amerine coverage *before* the procedure, Amerine's doctors also advised him *in advance* that there may not be coverage for the procedure, and Amerine went ahead with the procedure anyway. These facts do not establish any reliance by Amerine on

Defendants' actions to his detriment. Defendants mistakenly paid for the cost of surgery and anesthesia *after* the procedure was completed, and they had already denied coverage. Furthermore, they ultimately recovered these costs. These circumstances do not constitute waiver because Amerine was well aware of Defendants' position before he decided to proceed with the surgery, and had already acknowledged to his health care providers that he may be responsible for the cost. *See, e.g.*, *Salyers*, 871 F.3d at 938 (applying waiver where insurer *did not* assert right to evidence of insurability but then denied coverage).

## V. CONCLUSION

29. Defendants did not abuse their discretion in denying coverage under the terms of the Plan and Policy. *See Boyd*, 410 F.3d at 1178.

30. The parties shall meet and confer, and submit a proposed judgment consistent with this Order for the Court's consideration before **April 13, 2018**.

**IT IS SO ORDERED.**

April 2, 2018

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**